## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

### CASE NO: 4:21-cv-02296

**MOQUITA QUINAN,**
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

       Plaintiff,                                              **JURY TRIAL DEMANDED**

v.

**JET LENDING, LLC,**

       Defendant.
_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
### MOTION TO FISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Moquita Quinan, through her undersigned counsel, responds in opposition to Defendant Jet Lending, LLC's Motion to Dismiss First Amended Class Action Complaint ("Motion"), [DE 12], and states:

## I.     INTRODUCTION

"Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021). Like in *Cranor*, "[t]he question presented is whether one of the defendant's victims has an Article III injury sufficient to support standing for a claim under the TCPA[,]" and consistent with the Fifth Circuit's holding in *Cranor*, this Court should conclude that she does because Defendant sent Plaintiff unsolicited prerecorded voice calls in violation of the TCPA. Defendant's arguments to the contrary are unavailing and rely on cases that undermine its position.

1

Defendant's other arguments – that Plaintiff has not sufficiently alleged the use of prerecorded messages and that Plaintiff fails to allege numerosity – should be disregarded by this Court as they were available to Defendant but not raised in its prior motion to dismiss and are thus precluded by Federal Rule of Civil Procedure 12(g)(2). If this Court is inclined to consider Defendant's newly raised arguments, it should nevertheless deny Defendant's Motion because Plaintiff has sufficiently alleged the use of prerecorded messages and that Defendant sent the same or similar messages to several thousand other consumers. At a minimum, this Court should grant Plaintiff leave to amend to address Defendant's concerns regarding the sufficiency of Plaintiff's allegations, concerns which did not exist until now. Accordingly, Defendant's request to dismiss this case with prejudice should be denied.

## II.   <u>FACTS</u>

As alleged in Plaintiff's operative First Amended Complaint, Plaintiff registered for one of Defendant's seminars on or about January 4, 2019. First Amended Complaint ("FAC"), [DE 11], at ¶11. "The registration form completed by Plaintiff contained a box that Plaintiff checked to receive more information about Defendant's services. Defendant represented to Plaintiff that 'By checking this box, ***you're consenting to receive marketing emails*** from: [Defendant].'" *Id.* at ¶13 (emphasis supplied). "Defendant's registration form made no mention of prerecorded marketing calls and Plaintiff never agreed or provided consent to receive any such calls from Defendant." *Id.* at ¶14. In fact, "Defendant's form is written in such a manner as to deceive individuals, including Plaintiff, into providing their telephone numbers for an unrelated reason so that Defendant can then market unrelated products, goods and services to them using prerecorded messages." *Id.* at ¶16.

Over one year after Plaintiff completed Defendant's on-line form, Defendant began calling Plaintiff with prerecorded voice calls regarding its loan products and services. *Id.* at ¶15. "In other

words, Defendant's calls were completely unrelated to the seminar for which Plaintiff had provided her number [] over one year prior." *Id*. Defendant called Plaintiff from different telephone numbers, and when Plaintiff heard Defendant's calls "she was easily able to determine that they were prerecorded." *Id.* at ¶19.

### III.   ARGUMENT

#### A.   Plaintiff did not Consent to Receive Calls from Defendant and has Suffered an Injury Sufficient for Article III Standing.

As held by the Fifth Circuit, "Congress determined that nuisance arising out of unsolicited telemarketing constitutes a cognizable injury." *Cranor*, 998 F.3d 686 at 688. In addition to the Fifth Circuit, the majority of Circuits to have analyzed the issue have concluded that a plaintiff pursuing a TCPA claim need only show that she received an unsolicited call or text message to satisfy the strictures of Article III standing.  *See id*. at 688 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (holding that invasion of privacy arising out of unwanted text messages is "the very harm that the Act is designed to prevent"); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (same); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (concluding that "nuisance and invasion of privacy" arising out of a "single prerecorded telephone call" are "the very harm that Congress sought to prevent" (quotation omitted))).

Here, Plaintiff alleges that approximately one year before Defendant's prerecorded voice calls, she completed an online form to register for one of Defendant's seminars. FAC at ¶11. The registration form completed by Plaintiff made no mention that Plaintiff was consenting to receive prerecorded marketing calls "and Plaintiff never agreed or provided consent to receive any such calls from Defendant." *Id.* at ¶14. In fact, "Defendant's form is written in such a manner as to deceive individuals, including Plaintiff, into providing their telephone numbers for an unrelated reason so that Defendant

3

can then market unrelated products, goods and services to them using prerecorded messages." *Id.* at ¶16.

Defendant simply ignores these allegations and relies on a misleading declaration from its Senior Vice President of Business Development. *See* Buriak Declaration, [DE 12-1]. The declaration is misleading in that it suggests that Plaintiff consented to receive all forms of communications when she signed up for Defendant's seminar. *See id.* at ¶4 (stating "that individuals had the option to join Jet Lending's contact list…"). In reality, Defendant's registration form "contained a box that Plaintiff checked to receive more information about Defendant's services. Defendant represented to Plaintiff that 'By checking this box, ***you're consenting to receive marketing emails*** from: [Defendant].'" FAC at ¶13 (emphasis supplied). Notably absent from the Buriak Declaration and the exhibits to that declaration is anything remotely establishing that Plaintiff was advised that she would receive calls in response to providing her telephone number to Defendant.

And the timing of Defendant's prerecorded marketing calls further supports Plaintiff's allegations that they were unsolicited and unwanted. Indeed, Defendant did not call Plaintiff shortly after she provided her number, and the calls were not about Defendant's seminar. Instead, Defendant called Plaintiff over one year later about a completely unrelated topic. As alleged in the First Amended Complaint, Defendant's practice of deceptively securing consumers' telephone numbers "allows Defendant to increase its profits by obtaining individuals' telephone numbers for one reason and then selling those individuals unrelated goods and services using prerecorded messages." FAC at ¶17.

Consistent with the Fifth Circuit's holding in *Cranor,* Plaintiff suffered a cognizable injury by virtue of receiving Defendant's unsolicited calls, and that is all she need show to satisfy Article III. And the two cases on which Defendant relies for its position are distinguishable and undermine Defendant's arguments. First, in *Legg v. PTZ Ins. Ag., Ltd.*, the consumers at issue were "told and agree[d] and

expect[ed] to receive such communications by phone in addition to email." 321 F.R.D. 572, 577 (N.D. Ill. 2017). In other words, the consumers who had been called in *Legg* "expressly agreed to receive the calls, [] they just did not do so in writing." *Id.* The court in *Legg* concluded the mere technical violation of securing consent for calls orally and not in writing was insufficient to rise to the level of an injury because the consumers should have expected to receive calls given that they were alerted that such calls would result from providing their telephone numbers. *Id.* ("As defendants point out, however, if an adopter has expressly agreed and expected to receive calls from defendant, and did receive those calls, the adopter has not been injured in any way, even if defendants technically violated a procedural requirement of the TCPA.").

The other case cited by Defendant, *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017), provides even less support to Defendant. In that case, the plaintiff expressly consented ***in writing*** to receive text message solicitations after following a robust opt-in procedure:

> The Stipulation establishes that Winner sent Kohl's a text message, containing the word "APP" from her mobile phone number. (Stip. ¶ 1.) Her text was sent in response to an advertisement directing customers to text "APP." (Id. ¶ 2.) The advertisement stated that, (1) by doing so, the customer "will receive two to three auto-dialed text messages" to set up their participation; (2) "Participation is not required to make a purchase;" (3) customers could "Reply **HELP** for help, reply **STOP** to cancel;" (4) message and data rates may apply; and (5) the terms and conditions of the program were available on Kohl's website. (Id. ¶ 3.)

*Id.* at *18.

*Legg* stands as the only case to have concluded that a violation of the statute's express written consent requirements is insufficient to satisfy Article III standing. Courts that have analyzed the same or similar issue have concluded that violations of the TCPA and its requirements are all that a plaintiff need show to satisfy Article III. *See Carl v. First Nat'l Bank*, No. 2:19-cv-00504-GZS, 2021 U.S. Dist.

LEXIS 111889, at *16 (D. Me. June 15, 2021) ("Likewise, within the First Circuit, other district courts have found standing to bring a TCPA claim based on injuries similar to Plaintiff's asserted injury here.") (citing *Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793, at *35 (D. Mass. Sep. 24, 2019) ("[A] mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing.") (quoting *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017))).

As discussed above, *Legg* was decided on unique facts that involved consumers being advised verbally, and explicitly, that they would be receiving marketing calls by providing their telephone numbers. And *Winner* stands for the obvious holding that an individual who provides consent does not have standing because they do not have a claim under the statute. Here, Plaintiff was never advised in writing or verbally that providing her telephone number would result in prerecorded marketing calls. Defendant misleadingly indicated that only emails would be sent and Plaintiff had no reason to expect that providing her number would subject her to Defendant's telemarketing one year later. Accordingly, the reasoning and holding of *Legg* are inapplicable. Moreover, it is undisputed that Plaintiff did not provide her express written consent for the calls at issue, rendering *Winner* irrelevant to the issue before the Court.

In sum, and pursuant to Fifth Circuit precedent, Plaintiff has Article III standing because she received unsolicited telemarketing calls in violation of her rights as elevated by Congress. *See Cranor*, 998 F.3d 686 at 688.

**B. Defendant is Precluded From Raising Arguments That Were Previously Available and it Failed to Raise.**

Defendant's Motion to Dismiss directed at the original Complaint consisted of less than two pages of argument directed solely at Plaintiff's purported lack of Article III standing. *See* Motion to Dismiss Complaint, [DE 9], at 4-5. Plaintiff amended her Complaint to address that issue and Defendant's claim that Plaintiff had consented to the calls, and nothing else.

Now, for the first time, Defendant raises two additional arguments: (1) Plaintiff has not sufficiently alleged that the calls she received were prerecorded; and (2) Plaintiff has not sufficiently alleged numerosity. Defendant's new arguments are precluded under Rule 12(g)(2). Specifically, "[a] party seeking dismissal in a pretrial motion under Rule 12 must include any defense or objection 'then available.'" *Mulllenix v. Univ. of Tex. at Austin*, No. 1:19-CV-1203-LY, 2021 U.S. Dist. LEXIS 102991, at *4 (W.D. Tex. Mar. 30, 2021) (quoting *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993). "If the party omits any defense or objection, Rule 12(g)(2) precludes a second motion based on the omitted defense or objection." *Id*. ("In its first motion to dismiss, the University requested that the court dismiss Mullenix's state-law claims for lack of subject-matter jurisdiction and the Title VII retaliation claim for failure to state a claim. The University did not request that the court dismiss Mullenix's Equal Pay Act retaliation claim. In its second motion to dismiss, the University requests that the court dismiss the Equal Pay Act retaliation claim as well as the repleaded Title VII retaliation claim. However, because Mullenix's original complaint asserted an Equal Pay Act retaliation claim, the University's argument to dismiss the Equal Pay Act retaliation claim for failure to state a claim was 'then available to the [University]' in its first motion to dismiss.").

Additionally, that Plaintiff amended her original Complaint has no impact on application of the Rule as "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading."

*Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 647-48 (W.D. Tex. 2006) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1388).

If there is any question, the "Fifth Circuit interprets Rule 12(g) in [the] manner" advanced by Plaintiff:

> If a party seeks dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b), he must include in such motion any other defense or objection then available which Rule 12 permits to be raised by motion. If the party omits such defense or objection, Rule 12(g) precludes him from making a further motion seeking dismissal based on the omitted defense or objection.

*VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 648 (N.D. Tex. 2020) (quoting *Albany Ins.*, 5 F.3d at 909); *see also Instincts v. Feline Future Cat Food Co.*, No. 4:09-CV-644-Y, 2011 U.S. Dist. LEXIS 171782, at *4 (N.D. Tex. May 2, 2011) ("In other words, a defendant is not permitted to bring two Rule 12(b) motions, even if the later-filed one asserts the defense of failure to state a claim.") (citing *Stoffels ex rel. SBC Concession Plan v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385, at 483 (3d ed. 2004) (observing that once a Rule 12(b) motion has been filed, "a second Rule 12(b) motion is not permitted").

In the case at hand, Plaintiff's allegations regarding Defendant's use of prerecorded marketing calls, as well as Plaintiff's class allegations, remained unchanged between the first and second complaints. Defendant had available to it, but failed to raise the arguments it raises for the first time now in its Motion. This Court should therefore either strike and/or disregard those arguments as they are precluded under Rule 12(g)(2).

### C.  Plaintiff Sufficiently Alleges That she Received Prerecorded Voice Calls.

As noted above, Defendant took no issue with Plaintiff's allegations pertaining to the use of prerecorded messages by Defendant. Now, for the first time, Defendant says the allegations are not enough, citing several cases the majority of which allowed the plaintiffs to file amended complaints, not dismissed the case with prejudice as Defendant requests. Notwithstanding Defendant's arguments, as noted in the First Amended Complaint, Plaintiff was easily able to determine that Defendant's calls were prerecorded. FAC at ¶19 (citing *Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.")); *see also Hirsch v. Fortegra Fin. Corp.,* No. 3:17-cv-1215-J-39JBT, 2018 U.S. Dist. LEXIS 219724, *11 (M.D. Fla. June 26, 2018) (same).

Plaintiff was able to determine that Defendant's calls were robotic and prerecorded, and alleges as much in her First Amended Complaint. Nothing more is required at the pleadings. To the extent this Court is inclined to consider Defendant's arguments on the sufficiency of Plaintiff's allegations, it should find that they are sufficient or direct Plaintiff to file an amended pleading with additional facts, not dismiss the case as Defendant requests.

### D.  Plaintiff Sufficiently Alleges Numerosity.

Like Plaintiff's allegations regarding the use of prerecorded messages, Defendant took no issue with Plaintiff's numerosity allegations when it filed its prior dismissal motion. Now, in violation of Rule 12(g)(2), Defendant disputes numerosity and ignores Plaintiff's allegations, claiming that Plaintiff has not shown that other individuals received Defendant's robocalls. Defendant is wrong.

As alleged in the First Amended Complaint, "Defendant caused similar prerecorded messages to be sent to individuals residing within this judicial district." FAC at ¶22. Plaintiff further alleges that

"the Class members number in the several thousands, if not more[,]" *Id.* at ¶27, and that "Defendant has placed automated calls and prerecorded messages to telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable." *Id.* at ¶28.

Contrary to Defendant's suggestion, numerosity is generally a low bar to satisfy. "Although there is no magic number of members which would require class certification, classes of more than forty members have been deemed to satisfy the numerosity requirement." *Braver v*, 329 F.R.D. at 328 (W.D. Okla. 2018) (citing *Horn v. Associated Wholesale Grocers, Inc*., 555 F.2d 270, 275-76 (10th Cir.1977)). Given Plaintiff's allegations cited above, the First Amended Complaint sufficiently alleges that the numerosity prong is satisfied. But, again, if this Court has any reservations, the remedy should be an order directing Plaintiff to amend her pleading, not outright dismissal as Defendant requests.

## IV.   <u>CONCLUSION</u>

Plaintiff received unsolicited calls in violation of her rights under the TCPA. She need not show more to satisfy Article III standing requirements. Defendant's remaining arguments are precluded by Rule 12(g)(2), unavailing, and, at most, should result in entry of an order allowing Plaintiff to file a Second Amended Complaint.

**WHEREFORE**, Plaintiff Moquita Quinan, respectfully requests entry of an order denying Defendant's Motion, and for such other and further relief deemed appropriate.

Dated: October 7, 2021

Respectfully submitted,

By: */s/ Ignacio Hiraldo*
Ignacio Hiraldo, Esq.
IJhiraldo@Hiraldolaw.com
**IJH Law**
1200 Brickell Ave.
Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: 786-496-4469
*Pro Hac Vice*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
(t) (305) 479-2299(f) (786) 623-0915
*Attorneys for Plaintiff and the Proposed Class*

11